UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA                      No.: 10 CR 813 (JFK)


- v. -


MOHAMMAD YOUNIS

                          Defendant
-------------------------------------------------------X

## DECLARATION OF MOHAMMAD YOUNIS

MOHAMMAD YOUNIS declares under the penalty of perjury, pursuant to 28 U.S.C. Section 1746, as follows:

1. I am the defendant in the above-captioned case and submit this declaration in support of my motion to suppress certain statements that I allegedly made to government agents. I also make this declaration in support of my motion to suppress certain physical/tangible evidence that was seized by government agents at my residence on May 13, 2010.

2. I make the following statements on the basis of my personal knowledge and to the best of my recollection. In this declaration, I am not attempting to establish all the facts and circumstances that transpired on the dates at issue.

3. I was born on May 14, 1966, in Gujrat, Pakistan. The English language is not my native language.

4. On or about May 13, 2010, government agents arrived at my residence located at 90 Oxhead Road, Centereach, New York. At approximately 6:00 a.m., I was awoken by a knock on the apartment door. My wife, Kristina, and my young daughter were present at the home as well. As a result of the knocking, my wife, Kristina, answered the apartment door.

5. On the early morning hours of May 13, 2010, many government agents entered into my residence. I was very overwhelmed by the mere presence of so many law enforcements officials in my home.

6. On or about May 13, 2010, while at my residence, I verbally answered numerous questions in response to questions posed to me by the government agents. While at my residence, the government agents did not advise me of my legal rights. Moreover, while at my residence, the government agents did not present me with a formal waiver of my legal rights. I have the belief that my statements to the government agents were

1

involuntarily elicited.  While at my apartment, the government agents questioned me outside of the presence of my wife.

7. On or about May 13, 2010, the government agents were at my residence from approximately 6:00 a.m. to 11:45 a.m.  During that time period, the government agents searched my entire apartment.  At some point in time, I signed documents that were presented to me by government agents.  The government agents also searched my car and my wife's car.

8. On or about May 13, 2010, I surrendered my passport to the government agents at their request.

9. On or about May 13, 2010, government agents seized several documents, including documents, from my residence and my automobile.

10. After the government agents completed the search of my apartment, I was instructed by the government agents to travel to the FBI offices in Melville, Long Island.  In response to the government agents' commands, I followed the government agents to their offices in Melville, Long Island.  As I drove to the FBI offices in Melville, the government agents traveled within a close proximity to my vehicle.

11. On or about May 13, 2010, I verbally answered numerous questions in response to questions posed to me by the government agents while at the FBI offices in Melville. While at the FBI offices, the government agents did not advise me of my legal rights. Moreover, while at the FBI offices, the government agents did not present me with a formal waiver of my legal rights.  I was interviewed by the government agents from approximately 12:45 p.m. to 4:30 p.m.  I have the belief that my statements to the government agents were involuntarily elicited.  I was questioned by government agents outside the presence of any civilian witnesses.

12. On or about May 17, 2010, I was interviewed at the FBI offices in Melville, Long Island. On that date, I verbally answered numerous questions that were posed to me by government agents.   While at the FBI offices, the government agents did not advise me of my legal rights.  Moreover, while at the FBI offices, the government agents did not present me with a formal waiver of my legal rights.  I was interviewed by the government agents for approximately two and a half hours, namely from approximately 3:00 p.m. to 5:30 p.m.  I have the belief that my statements to the government agents were involuntarily elicited.  I was questioned by government agents outside the presence of any civilian witnesses.

13. On or about May 19, 2010, I was interviewed at the FBI offices in Melville, Long Island. On that date, I verbally answered numerous questions that were posed to me by government agents.   While at the FBI offices, the government agents did not advise me of my legal rights.  Moreover, while at the FBI offices, the government agents did not present me with a formal waiver of my legal rights.  I was interviewed by the government agents for approximately two hours, namely from 2:00 p.m. to 4:00 p.m.  I have the belief

2

that my statements to the government agents were involuntarily elicited. I was questioned by government agents outside the presence of any civilian witnesses. During the questioning, I was informed by the government agents that I was the subject of a criminal investigation.

14. On or about June 3, 2010, I along with my attorney, Phil Solages, went to the U.S. Attorney's Office in Manhattan for a "proffer" meeting. I advised my attorney that I wanted to attend the proffer meeting. Before the proffer meeting began, I along with my attorney, signed a contract entitled "proffer agreement." After signing the proffer agreement, I answered questions that were posed to me by government agents in the presence of my attorney, Phil Solages.

15. On or about June 15, 2010, I along with my attorney, Phil Solages, went to the U.S. Attorney's Office in Manhattan for a "proffer" meeting. I advised my attorney that I wanted to attend the proffer meeting. Before the proffer meeting began, I along with my attorney, signed a contract entitled "proffer agreement." At this meeting, I provided the government with handwritten documents that I created in anticipation of the meeting. After signing the proffer agreement, I answered questions that were posed to me by government agents in the presence of my attorney, Phil Solages.

16. On or about September 15, 2010, I was arrested by government agents at my home located at 90 Oxhead Road, Centereach, New York, at approximately 6:00 a.m.

17. During all the time periods mentioned above, a translator was never provided to me by the government agents.

18. In the discovery stage of this case, the government produced various memorandum that purports to memorialize my statements along with copies of documents seized from my home.

19. Pursuant to 28 U.S.C. Section 1746, I declare under the penalty of perjury that the foregoing is true and correct.

_____
MOHAMMAD YOUNIS

Executed on the following date: 2/27/11

3

CERTIFICATE OF SERVICE

March 10, 2011

I hereby certify that on March    2011, I electronically filed the defendants Notice of Motion and the Memorandum of Law with the Clerk of the Court using the CM?ECF system which will send notification of such filing to Jeffrey Brown & Randall Jackson, Assistant United States Attorneys, United States Attorney's Office, Southern District of New York, One St. Andrews Plaza, New York, New York 10007.

SOLAGES & SOLAGES, LLP
Phil Solages, Esq.
Attorneys for Defendant
1300 Veterans Memorial Highway
Suite 320
Hauppauge, New York 11788
(631) 366-5700