```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4-19-11
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
UNITED STATES OF AMERICA        :
                                :
     -against-                  :     No. 10 Cr. 813 (JFK)
                                :     **Memorandum Opinion and Order**
MOHAMMAD YOUNIS,                :
                                :
               Defendant.       :
-------------------------------X

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Defendant Mohammad Younis' ("Defendant" or "Younis") motion to suppress (1) items seized from his residence and vehicles pursuant to a consent search, and (2) pre-arrest statements made to law enforcement agents. For the reasons that follow, the motion is denied in part.

## I.   Background

In a two-count Indictment dated September 15, 2010, Younis is charged with conspiracy to operate an unlicensed money transmitting business and the substantive offense of operating and aiding and abetting the operation of an unlicensed money transmitting business, in violation of 18 U.S.C. § 1960, 2. The Government alleges that Younis accepted tens of thousands of dollars in the United States and either delivered the money to recipients in this country or helped transfer the money to recipients in Pakistan without a license from the State of New York. Specifically, the Government alleges that Younis effectuated the transfer of money from a co-conspirator in

1

Pakistan to Faisal Shahzad, the Times Square bomber, in New York.

Prior to his indictment and arrest, Younis was interviewed by federal law enforcement agents four times. In a sworn declaration, Younis asserts that on May 13, 2010, he, his wife, and daughter were awakened at 6:00 a.m. by federal agents knocking on the door of their Centereach, New York apartment. (Younis Decl. ¶ 4). After Younis' wife answered the door, "many" agents entered the apartment. (Id. ¶¶ 4-5). He claims that he "was very overwhelmed by the mere presence of so many law enforcement officials in [his] home." (Id. ¶ 5). Younis acknowledges that he signed documents the agents presented to him, one of which was presumably a consent form authorizing the search of his entire residence and two automobiles in his driveway. (Id. ¶ 7; Decl. of John P. Cronan, Ex. A).[1] The agents stayed at the apartment until approximately 11:45 a.m., during which time they asked Younis "numerous questions," searched his home, and searched his and his wife's cars. (Younis Decl. ¶¶ 6-7). The agents seized documents from the apartment and Younis' car and requested that Younis surrender his Pakistani passport. (Id. ¶¶ 8-9).

---

[1] Although the agents obtained Younis' consent to search, they also had a warrant issued by Magistrate Judge Ellis on May 12, 2010 authorizing the search of Younis' Centereach residence between the hours of 6:00 a.m. and 10:00 p.m. on or before May 17, 2010. (Cronan Decl., Ex. B).

After the agents completed their searches, Younis "was instructed by the government agents to travel to the FBI offices in Melville, Long Island." (Id. ¶ 10). Younis drove himself to the FBI office without any agents in his car, and "the government agents traveled within a close proximity to [his] vehicle." (Id.). The agents interviewed Younis at the FBI office on May 13, 2010 from approximately 12:45 p.m. to 4:30 p.m. (Id. ¶ 11). He was permitted to leave. Younis went back to the FBI offices on two subsequent occasions. On May 17, 2010, federal agents interviewed Younis from approximately 3:00 p.m. to 5:30 p.m., and on May 19, 2010, agents again interviewed Younis from approximately 2:00 p.m. to 4:00 p.m. (Id. ¶¶ 12-13). During this last interview on May 19th, the interviewing agents informed Younis that he was the subject of a criminal investigation. (Id. ¶ 13). Younis asserts that at no time during the fourteen hours he spent with federal agents over three days was he given a Miranda warning or offered a written waiver of his rights. (Id. ¶¶ 6, 11-13). With respect to unspecified statements made during each of the four interviews, he states: "I have the belief that my statements to the government agents were involuntarily elicited." (Id.). Younis was arrested pursuant to an arrest warrant on September 15, 2010.

Younis now moves to suppress any statements he made to government agents during the four interviews in May 2010 on the grounds that the questioning violated his Fifth Amendment rights.  Younis additionally moves to suppress any physical evidence seized during the May 13, 2010 search of his apartment and automobiles because his consent to the search was not valid and the searches violated his Fourth Amendment rights.  The Government urges the Court to deny Younis' motions without a hearing.

## II.   Discussion

"A defendant seeking the suppression of evidence is not automatically entitled to an evidentiary hearing on his claim; rather, the defendant must first 'state sufficient facts which, if proven, would [require] the granting of the relief requested.'" United States v. Seijo, No. 02 Cr. 1415, 2003 WL 21035245, at *4 (S.D.N.Y. May 7, 2003) (quoting United States v. Kornblau, 586 F. Supp. 614, 621 (S.D.N.Y. 1984)).  The defendant must show "that disputed issues of material fact exist before an evidentiary hearing is required." United States v. Viscioso, 711 F. Supp. 740, 745 (S.D.N.Y. 1989) (citation omitted).  The defendant's allegations, moreover, must be "definite, specific, detailed, and nonconjectural." United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992) (internal quotations and citations omitted).

### A. Statements

Defendant argues that any statements he made during the four pre-arrest interviews should be suppressed because the interrogating agents failed to provide him with a Miranda warning. Miranda warnings are only required when law enforcement agents question a person who is in custody. Miranda v. Arizona, 384 U.S. 436, 444 (1966); United States v. Newton, 369 F.3d 659, 669 (2d Cir. 2004). "The test used in determining whether a defendant was in custody is an objective one that (a) asks whether a reasonable person would have understood herself to be 'subjected to restraints comparable to those associated with a formal arrest,' and (b) 'focuses upon the presence or absence of affirmative indications that the defendant was not free to leave.'" United States v. Kirsh, 54 F.3d 1062, 1067 (2d Cir. 1995) (quoting United States v. Mitchell, 966 F.2d 92, 98 (2d Cir. 1992)); see Mitchell, 966 F.2d at 98 ("Decisions in this circuit have emphasized that in the absence of actual arrest, an interrogation is not 'custodial' unless the authorities affirmatively convey the message that the defendant is not free to leave."). Where the defendant is not placed under arrest, "something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or to allow the suspect to

do so." United States v. Guarno, 819 F.2d 28, 32 (2d Cir. 1987).

Thus, in deciding a motion to suppress statements made without a Miranda warning, the Court looks for conduct or statements by law enforcement agents which objectively indicates that the Defendant was in some way restrained. However, the Younis Declaration does not allege a single fact with respect to the law enforcement agents who questioned him on May 13, 17, and 19th. There is no allegation that the agents detained him, physically restrained him from movement, or otherwise acted in such a way as to give a reasonable person the belief that he was under arrest. The Younis Declaration is equally silent as to any statements the agents might have made which could have coerced him into submitting to their questioning or created a situation tantamount to custody. Indeed, the Younis Declaration does not describe the interviews, beyond their location and length, at all.

The only facts alleged are that an indeterminate number of agents questioned Defendant at his home and at the FBI offices in Long Island without civilian witnesses. However, the location of the interrogation does not in and of itself determine whether questioning is custodial. "[A]bsent an arrest, interrogation in the familiar surroundings of one's own home is generally not deemed custodial." Newton, 369 F.3d at

6

675.  Similarly, there is no requirement that a Miranda warning must be given merely because an interview takes place at the police station.  See Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (per curiam).  Absent some facts about the agents' conduct at those two locations, it is impossible for the Court to find that the pre-arrest interviews were custodial in nature.

Defendant's assertion that he believes his statements were "involuntarily elicited" does not detract from this conclusion.  As an initial matter, this statement is not a factual allegation concerning the circumstances of the interviews.  More importantly, the Supreme Court has made clear that "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned."  Stansbury v. California, 511 U.S. 318, 323 (1994) (per curiam).

Furthermore, while the Younis Declaration does not address the agents' conduct at all, it does reveal a few important facts about Defendant's own behavior.  Defendant acknowledges that although the agents "instructed" him to go to the FBI offices on May 13, 2010, he drove himself to the interview in his own car, and the agents drove separately.  He does not allege that there was any police escort during his subsequent trips to the FBI offices on May 17th and 19th, and there is every reason to

7

believe that, like the May 13th visit, Defendant drove himself to and from the FBI offices.  After each interview, Defendant returned home.  These actions tend to undermine any argument that Defendant was not free to leave the FBI interviews.

The Court finds that Defendant's submission is insufficient as a matter of law to establish that the four pre-arrest interviews were custodial in nature such that he should have received a Miranda warning.  As Defendant has failed to allege any relevant facts in support of his motion, there is no dispute necessitating a hearing.  The motion to suppress pre-arrest statements is denied.

### B.   Physical Evidence

Defendant also challenges the admissibility of any physical evidence seized from his home and automobiles.  "The Fourth Amendment generally requires police to secure a warrant before conducting a search."  Maryland v. Dyson, 527 U.S. 465, 466 (1999) (per curiam).  However, "one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."  Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).

> The question whether a consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances. In this circuit, the test is an objective one - whether the agents had a reasonable basis for believing that there was valid consent to the search.

> In applying this test, it is appropriate to consider the particularities of the situation that is presented in any given case and the possibly vulnerable subjective state of the person who consents. Other relevant factors are whether the defendant was in custody and in handcuffs, whether there was a show of force, whether the agents told the defendant that a search warrant would be obtained, whether the defendant had knowledge of the right to refuse consent, and whether the defendant previously had refused to consent.

United States v. Lavan, 10 F. Supp. 2d 377, 388 (S.D.N.Y. 1998) (internal quotations and citations omitted).

There is no dispute that Defendant signed a consent form authorizing the search of his residence and automobiles, with his wife acting as a witness to his signature. By his signature, Defendant additionally confirmed that he had been advised of his right to refuse consent, that he gave permission to search voluntarily, and that he authorized the agents to seize any items related to their investigation. However, Defendant notes that the consent form does not reflect the time at which it was signed; he argues that consent may not have been given until after the agents had begun their search. Furthermore, Defendant states that English is not his native language; despite the fact that he chooses to appear in Court without an interpreter, there is some question about his comprehension of the consent form. These allegations, although bare, raise a fact issue with respect to the voluntariness of Defendant's consent to search. Consequently, the Court will

9

hold a suppression hearing with respect to any physical evidence seized on May 13, 2010.

### III.   Conclusion

Defendant's motion to suppress pre-arrest statements made to law enforcement agents during four interviews is denied without a hearing. The Court will conduct a hearing on Defendant's motion to suppress physical evidence seized pursuant to a consent search on April 20, 2011 at 11:00 a.m. in Courtroom 20-C.

**SO ORDERED.**

Dated:   New York, New York
         April 19, 2011

                                    _____
                                    John F. Keenan
                                    United States District Judge