UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA


- v. -                                      No.: 10 Cr. 813 (JFK)


MOHAMMAD YOUNIS

              Defendant
-------------------------------------------------------X


**DEFENDANT MOHAMMAD YOUNIS' SENTENCING MEMORANDUM (LETTER)**




Phil Solages, Esq.
1300 Veterans Memorial Highway
Suite 320
Hauppauge, New York 11788
(631) 366-5700
Attorney for the Defendant

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................ 1

GENERAL OVERVIEW OF THE CASE .................................................... 2

*Facts under the indictment* ..................................................................... 2

*Cooperation with authorities* .................................................................. 2

*The arrest & arraignment* ...................................................................... 2

*The guilty plea* ...................................................................................... 3

*The plea agreement* ............................................................................... 3

*Forfeiture* ............................................................................................. 3

*The presentence investigation report* ...................................................... 4

NATURE AND CIRCUMSTANCES OF THE OFFENSE AND HISTORY AND
CHARACTERISTICS OF MR. YOUNIS ................................................... 4

*The nature and circumstances of the offense* .......................................... 4

*The history and characteristics of Mr. Younis* ........................................ 5

➢ ***Mr. Younis' family history*** ......................................................... 5

➢ ***Mr. Younis' employment history*** ................................................ 5

➢ ***Mr. Younis' unwitting involvement*** ............................................. 6

➢ ***Mr. Younis was not enriched by his unlawful conduct*** .................. 6

➢ ***Mr. Younis' good character in the community*** .............................. 7

ADDITIONAL CONSIDERATIONS UNDER SECTION 3553(A)(2) ......... 8

*Retribution* ........................................................................................... 8

*Deterrence* ........................................................................................... 9

*Incapacitation* ...................................................................................... 10

Page

*Rehabilitation* …………………………………………………………….…10

**ACCEPTANCE OF RESPONSIBILITY** ……………………………………….10

**DEFENDANT'S SENTENCING RECOMMENDATION** ……………………………11

**CONCLUSION** ……………………………………………………………………11

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                    <u>Page(s)</u>

<u>Graham v. Florida</u>,
130 S.Ct. 2011 (2010)…………………………………………………………..…8

<u>United States v. Baker</u>,
445 F.3d 987 (7th Cir. 2006)…………………………………………………………9

<u>United States v. Knights</u>,
534 U.S. 112 (2001)…………………………………………………………...……11

<u>Statutes</u>

18 U.S.C. § 1960…………………………………………………………………1, 3

18 U.S.C. § 3553………………………………………………………….....passim

<u>Guidelines</u>

U.S.S.G. § 2S1.3…………………………………………………………………....3

U.S.S.G. § 2B1.1(b)(1)(C)…………………………………………………….....3

U.S.S.G. § 3E1.1(a)…………………………………………………………3

LAW OFFICES OF

# PHIL SOLAGES, P.C.

ATTORNEY– AT – LAW
1300 VETERANS MEMORIAL HIGHWAY, SUITE 320
HAUPPAUGE, NY 11788

Tel. (631) 366-5700
Fax. (631) 366-5705

November 8, 2011

DELIVER VIA MAIL & ECF

Hon. Judge John F. Keenan
U.S. District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

RE: <u>USA v. Mohammad Younis</u>
    10 CR 813 (JFK)

Dear Honorable Judge Keenan:

## INTRODUCTION

The defendant Mohammad Younis is presently scheduled for sentencing on December 1, 2011. This letter is submitted to the Court as the defendant's sentencing memorandum. On August 18, 2011, Mr. Younis plead guilty to the single count of operating an unlicensed money transmitting business in violation of 18 U.S.C. section 1960. In light of his guilty plea, Mr. Younis respectfully requests that the Court impose a non-custodial sentence. The defense contends that a non-custodial sentence would be in accordance with the plea agreement and the Guidelines.

Mr. Younis respectfully requests that the Court balance the competing interests required at sentencing and impose a non-custodial sentence. To achieve this objective, the Court should carefully examine the mitigating factors articulated in this submission. In the instant case, a non-custodial sentence is "sufficient, but not greater than necessary" to achieve the objectives of sentencing as found in 18 U.S.C. section 3553.

1

## GENERAL OVERVIEW OF THE CASE

*Facts under the indictment*

The indictment alleges that Mr. Younis engaged in two separate money transmitting transactions on April 10, 2010, without the appropriate state money transmitting license or federal money transmitting registration.

Specifically, on April 10, 2010, Mr. Younis provided an individual with 7,000 dollars in Ronkonkoma, Long Island. Unbeknownst to Mr. Younis, that individual was Faisal Shahzad, the attempted Times Square bomber. Mr. Younis had never met Faisal Shahzad prior to that occasion, nor has he ever had any contact with him after this encounter. Moreover, Mr. Younis did not know or have reason to know how Faisal Shahzad intended on using the money that had been transmitted to him.

Subsequently, on April 10, 2010, Mr. Younis met with another individual in Commack, Long Island. During that encounter, Mr. Younis transmitted 5,000 dollars to that individual.

*Cooperation with authorities*

Mr. Younis was interviewed by FBI agents on May 13, 2010. Mr. Younis was interviewed by authorities regarding his role in the operation of an unlicensed money transmitting business. On that day, Mr. Younis traveled to the FBI offices in Melville, Long Island to cooperate with the law enforcement investigation. On May 17, 2010, Mr. Younis returned to the FBI offices, without counsel, to cooperate with the continuing investigation. On May 19, 2010, Mr. Younis returned to the FBI offices, without counsel, to further cooperate with the authorities' investigation.

On June 3, 2010, Mr. Younis voluntarily attended a proffer meeting at the U.S. Attorney's Office in the presence of counsel. Subsequently, on June 15, 2010, Mr. Younis continued his proffer session with the assistance of counsel. During the proffer sessions, Mr. Younis provided valuable information to the Government regarding hawala practices and informal value transfer systems. Moreover, during the proffer sessions mentioned above, Mr. Younis informed the Government that he did not profit by receiving fees for money transferred.

*The arrest & arraignment*

On September 15, 2010, Mr. Younis was arrested by the authorities at his Centereach, Long Island home. Mr. Younis' arrest occurred without any incident or injury to any member of law enforcement. During the entire arrest process, Mr. Younis was fully compliant with the directives of the authorities. On that day, Mr. Younis was subsequently transported to the detention facility at the Courthouse.

As a result of the complete absence of any criminal history in Mr. Younis' background and his otherwise exemplary law abiding life, Mr. Younis was released on signatory bonds with the consent of the Government. Moreover, as part of his release conditions, Mr. Younis was placed on supervised release through the U.S. Pretrial Services Agency.

### The guilty plea

On August 18, 2011, Mr. Younis plead guilty to operating an unlicensed money transmitting business in violation of 18 U.S.C. section 1960. Mr. Younis acknowledged that he violated the law by committing the instant offense. Mr. Younis unequivocally accepted responsibility for his wrong doings in open Court.

### The plea agreement

Mr. Younis plead guilty pursuant to a plea agreement. (See plea agreement dated August 18, 2011, annexed hereto as EXHIBIT A). For the purposes of sentencing, the plea agreement set forth the Government's and Mr. Younis' non-binding estimates of the likely advisory Guidelines applicable to this case.

Pursuant to the plea agreement, the adjusted base offense level for the offense charged is 6 pursuant to Guideline section 2S1.3. The plea agreement added an additional 4 levels because the amount of money involved in the offense was greater than $10,000, but not more than $30,000 pursuant to Guideline section 2B1.1(b)(1)(C).

The plea agreement recognized that since Mr. Younis accepted responsibility for the offense and gave timely notice of his intention to plead guilty, the offense level is reduced 2 levels pursuant to 3E1.1(a). Therefore, the adjusted offense level is 8.

Finally, the plea agreement provides that with the application of Criminal History Category 1, the total offense level 8 yields a Guidelines sentencing range of 0 to 6 months.

### Forfeiture

As indicated above, on April 10, 2010, Mr. Younis transmitted a grand total of 12,000 dollars without the appropriate state money transmitting license or federal money transmitting registration. In light of the money transfers, the Government elected to pursue a forfeiture in the specific amount of 12,000 dollars. In the plea agreement, Mr. Younis consented to a money judgment in that amount. It should be noted that the plea agreement, specifically states in relevant part that "the Money Judgment constitutes property involved in the illegal money transmitting offense, **and is not indicative of, or intended to represent, the loss, if any, suffered by any party as a result of the defendant's conduct**." (See page 2 of plea agreement dated August 18, 2011, annexed hereto as EXHIBIT A).

3

*The presentence investigation report*

The significant Guideline conclusions of the Presentence Investigation Report ("P.S.R.") are consistent with the Guidelines ranges set forth in the above-mentioned plea agreement. The P.S.R. specifically indicates that "based on an offense level of 8 and a Criminal History Category of 1, the applicable guideline range of imprisonment is 0 to 6 months (Zone A)." (See page 13 of Mr. Younis' P.S.R.). Since the P.S.R. is consistent with the plea agreement, Mr. Younis has no sustainable objection to the advisory Guideline calculation in the P.S.R. In light of the foregoing, Mr. Younis respectfully requests that the Court impose a non-custodial sentence as permitted under the P.S.R..

## NATURE AND CIRCUMSTANCES OF THE OFFENSE AND HISTORY AND CHARACTERISTICS OF MR. YOUNIS

Section 3553(a)(1) requires that the nature and circumstances of the instant offense be considered by the Court when determining the sentence to impose. Moreover, section 3553(a)(1) also mandates that the Court consider Mr. Younis' history and characteristics at the time of sentencing.

*The nature and circumstances of the offense*

The nature and circumstances of the instant offense stems from the ancient practice known as hawala. Hawala is defined in the following manner:

> Hawala is an informal value transfer system based on the performance and honor of a huge network of money brokers, which are primarily located in the Middle East, North Africa, the Horn of Africa, and South Asia. It is basically a parallel or alternative remittance system that exists or operates outside of, or parallel to traditional banking or financial channels. Hawala has its origins in classical Islamic law and is mentioned in texts of Islamic jurisprudence as early as the 8th century. (See http://en.wikipedia.org/wiki/Hawala).

Even though the practice of hawala is illegal in the United States, it is a customary and legal practice thorough out much of the world. As mentioned above, hawala is a cultural practice in the Middle East. As will be articulated below, Mr. Younis was born and raised in the country of Pakistan. The practice of hawala has been a part of Mr. Younis' native country for centuries. Unfortunately, Mr. Younis' cultural upbringing skewed his judgment in the instant offense. In light of the foregoing, this Court should impose a lenient sentence because Mr. Younis' illegal conduct was motivated, in part, due to cultural differences.

4

*The history and characteristics of Mr. Younis*

> ### *Mr. Younis' family history*

Mr. Younis was born on May 14, 1966, in Gujrat, Pakistan. As a young child living in Pakistan, Mr. Younis developed a deep interest in horticulture. In 1989, Mr. Younis earned a bachelor's degree in horticulture at the University of Agriculture Faisalabad in Pakistan. (See copy of Mr. Younis' college degree, annexed hereto as EXHIBIT B).

In November of 1990, Mr. Younis immigrated to the United States of America. Once in the United States, Mr. Younis settled in Long Island, New York. In 1998, Mr. Younis met his future wife, Kristina. Kristina was born on Long Island, New York. Kristina's family immigrated to the United States from Italy.

Mr. Younis and Kristina continued their courtship until 2001. In that year, Mr. Younis and Kristina were married on Long Island, New York. Mr. Younis and Kristina are parents to a twelve year old child. Kristina is a full time homemaker who raises the couple's child. Mr. Younis resides with his family in Centereach, Long Island.

> ### *Mr. Younis' employment history*

Mr. Younis was continuously employed from approximately January of 1991 to December of 2010. The last position that Mr. Younis held began in May of 2008. Mr. Younis was employed as a field coordinator for Plant Essential, Inc.. Mr. Younis operated as a third-party vendor for Lowe's plant and garden centers in Nassau and Suffolk counties. Mr. Younis earned approximately 35,000 dollars a year in that position. In that capacity, Mr. Younis was responsible for supervising the day to day maintenance of the garden departments of several Lowe's stores.

Mr. Younis maintained that position until December of 2010. Mr. Younis was terminated from his position approximately three months after his arrest was reported in the news media. Mr. Younis was informed by management that Lowe's would not continue his employment because of the publicity that his criminal case received in the media. During the plea allocution in this case, Mr. Younis specifically indicated to the Court that he had been terminated from his position because of the media attention associated with his case.

Since January of 2011, Mr. Younis has been receiving unemployment benefits. Mr. Younis has been diligently seeking new employment but he has been unable to secure a new position. Mr. Younis has been unable to secure a new position in part because of the negative publicity that he received in the media. Moreover, Mr. Younis has also been unable to secure a new position because many prospective employers refuse to hire an individual that has a pending criminal case.

Prior to working for Lowe's, Mr. Younis had never been fired from any position that he had held.  It should be further noted that Mr. Younis has continuously filed his state and federal income tax returns since his arrival in this country.

> ### *Mr. Younis' unwitting involvement*

Mr. Younis had no knowledge that Faisal Shahzad was going to use the transferred money to conduct a terror plot.  The P.S.R. specifically indicates that Mr. Younis transferred the monies "without knowledge of how the customers were planning to use the funds."  (See page 5 of Mr. Younis' P.S.R.).  This assertion is supported by the official statements that have been issued by many high ranking public officials.  For example, FBI Director Jan Fedarcyk stated "These funds were used, without **Younis's knowledge**, in furtherance of Shahzad's Times Square terrorist attack…"  (See U.S. Attorney SDNY press release, dated September 15, 2010).

NYPD Commissioner Raymond W. Kelly stated in relevant part regarding Mr. Younis "…. Mohammad Younis, **albeit unwittingly**, gave Shahzad the access to cash needed to facilitate his attempted car bombing in Times Square."  (See U.S. Attorney SDNY press release, dated September 15, 2010).

U.S. Attorney Preet Bharara stated in relevant part: "Mohammed Younis engaged in illegal activity that, although **unbeknownst to him**, facilitated the funding of a potentially lethal attack in New York City.  (See U.S. Attorney SDNY press release, dated August 18, 2011).

Based on the foregoing, one fact is undisputable: Mr. Younis did not know how the customers were planning to use the funds that he transmitted.  Therefore, Mr. Younis' unwitting involvement should be taken into consideration by this Court.  As a result, this Court should use its legal authority and discretion to impose a non-custodial sentence.

> ### *Mr. Younis was not enriched by his unlawful conduct*

At the time of the offense, Mr. Younis and his family were living a very modest lifestyle.  Specifically, Mr. Younis and his wife live in the working class community of Centereach, Long Island.  Mr. Younis and his family reside in a ground level apartment.  (See photograph of Mr. Younis' residence, annexed hereto as EXHIBIT C).  Mr. Younis rents the apartment in which he resides with his family.  Mr. Younis owns a 1998 Nissan Altima and his wife owns a 2003 Nissan Altima.  (See photographs of Mr. Younis' and Kristina's automobiles, annexed hereto as EXHIBIT D and EXHIBIT E respectively).  Mr. Younis does not own any substantial assets or accounts.  Mr. Younis does not live a lavish or opulent lifestyle.  On May 13, 2010, the authorities searched Mr. Younis' home and did not discover any large sums of cash, jewelry or other valuable belongings.

As mentioned above, Mr. Younis worked as a field coordinator at various Lowe's stores.  It should be noted that Mr. Younis was not affiliated with a physical or actual business that acted as a front for hawala activities.

6

Moreover, Mr. Younis has always maintained that he "did not receive any financial compensation for his role in the offense." (See page 7 of Mr. Younis' P.S.R.). Mr. Younis has maintained that position even before he retained counsel in connection with this matter. As a result, Mr. Younis is distinguishable from the typical hawaladar, who engages in the practice of hawala for monetary compensation and financial enrichment. It is evident that Mr. Younis has absolutely no financial wealth. Mr. Younis was not enriched due to his conduct in the instant offense. In light of the foregoing, it is evident that Mr. Younis' actions were not motivated by greed or personal enrichment.

Most importantly, Mr. Younis did not cause any one individual or entity to suffer an actual financial loss from his illegal conduct. The Government has never accused Mr. Younis of transmitting stolen money or funds that were acquired illegally. There are no identifiable victims in connection with Mr. Younis' conduct because none exist.

In sum, a review of Mr. Younis' characteristics reveals that he was not enriched from his illegal conduct. Secondly, Mr. Younis' actions did not result in a financial loss to anyone. Therefore, the defense is respectfully requesting that the Court impose a non-custodial sentence in light of these mitigating factors.

> ### *Mr. Younis' good character in the community*

The instant offense is Mr. Younis' only brush with the criminal justice system. Despite his mistake, Mr. Younis is regarded as valuable member of the community. Various letters have been submitted to the Court and these letters provide some insight into how Mr. Younis is viewed by the community. (See copies of support letters, annexed hereto as EXHIBIT F).

The letters written in support of Mr. Younis provide the Court with a glimpse of the high esteem in which he is held in the community. Abdul Razzak Aziz, director of the Islamic Association of Long Island, describes Mr. Younis as "a person of good moral character" in the Long Island Islamic community. (See copy of Abdul Razzak Aziz's support letter dated October 7, 2011, addressed to Judge Keenan, annexed hereto as EXHIBIT F).

In his support letter to the Court, Asif Mahmood states in relevant part that Mr. Younis is "a hardworking man who is supporting his family and trying to live the American Dream." (See copy of Asif Mahmood's support letter addressed to Judge Keenan, annexed hereto as EXHIBIT F).

In describing Mr. Younis, Saleem Akbar writes "I found him a hardworking and a dedicating individual who is always there in the hour of need. I know he is trying hard to support his family. He loves his family and this country. He is a peace loving citizen. I know he did a mistake but jail is not a suitable place for him." (See copy of Saleem Akbar's support letter addressed to Judge Keenan, annexed hereto as EXHIBIT F).

Umar Iqbal, a former roommate of Mr. Younis from 1993 to 1998, states in relevant part that "Mohammad Younis is still to this very day, years later, my good friend. For eighteen years, I have witnessed his honesty, loyalty, and caring nature when it comes to all of his dealings with friends, family, and business associates." (See copy of Umar Iqbal's support letter, dated October 23, 2011, addressed to Judge Keenan, annexed hereto as EXHIBIT F).

In light of the foregoing, it is evident that Mr. Younis is regarded as a good standing member of the community. As a result, this Court should afford him the opportunity to remain within the community.

## ADDITIONAL CONSIDERATIONS UNDER SECTION 3553(A)(2)

Under 18 U.S.C. 3553(a)(2), a Court must taking into account the following considerations when imposing a sentence:

> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (See 18 U.S.C. 3553(a)(2)). (See Graham v. Florida, where the Court articulates "retribution, deterrence, incapacitation, and rehabilitation" as factors to be considered for purposes of sentencing. 130 S.Ct. 2011, 2028 (2010)).

*Retribution*

In determining an appropriate sentence, 18 U.S.C. 3553(a)(2)(A), mandates that the Court reflect on the seriousness of the offense and provide "just punishment" for the offense. In the instant case, prior to his being sentenced by the Court, Mr. Younis has been severely penalized for his unlawful actions.

First, Mr. Younis has had to endure the very public embarrassment of being prosecuted for this offense. The national and international media reported Mr. Younis' arrest and plea on television, newspapers, and the Internet. Mr. Younis and his family had their privacy invaded by the multitude of reporters that flanked their home following his arrest in September of 2010.

Secondly, Mr. Younis has had to endure the negative financial consequences that resulted from his conduct. As mentioned above, Mr. Younis was terminated from his job as a direct result of the extensive coverage that his case received in the media. Prior to the media exposure, Mr. Younis had a stable, continuous, and constant employment history. As a result of his conduct, Mr. Younis not only faces punishment from the

criminal justice system, but he now has no gainful employment. The stigma from this case has made it impossible for Mr. Younis to find suitable employment. Mr. Younis has no income and his family relies on his unemployment benefits. To further aggravate the situation, Mr. Younis is required to pay a forfeiture of 12,000 dollars to the Government, even though he is unemployed.

Third, Mr. Younis is now a convicted felon. As a felon, Mr. Younis has to endure the stigma associated with a felony conviction. Moreover, Mr. Younis' felony conviction will further penalize him due to the adverse collateral consequences that stems from a felony conviction. For example, Mr. Younis is a college graduate who has always held supervisory positions. However, with a felony conviction, Mr. Younis' ability to gain employment with a major company will be forever hindered despite his college degree.

Fourth, prior to September 15, 2010, Mr. Younis had never been arrested or charged with a crime. On September 15, 2010, Mr. Younis spent the day in jail before he was released. Mr. Younis had to deal with the embarrassment, humiliation, loss of self-esteem, and personal degradation associated with spending time in jail. As a first time offender, the loss of liberty and freedom was a foreign experience for Mr. Younis. In United States v. Baker, the Court recognized that incarceration for a first time offender is more significant than an offender who has previously been incarcerated. (See 445 F.3d 987 (7th Cir. 2006). In light of the foregoing, Mr. Younis has already received his "just punishment" and just deserts.

Lastly, notions of fair play and justice require that the punishment imposed by the Court be commensurate to the offense committed by the defendant. In the instant case, Mr. Younis was convicted of transmitting the sum of 12,000 dollars without the appropriate state license or federal registration. In the grand scheme of things, the 12,000 dollar amount is a nominal value. Had Mr. Younis been convicted of transferring hundreds of thousands of dollars or millions of dollars, then a custodial sentence would be more appropriate. Since the amount of money at issue is slightly over ten thousand dollars, the imposition of a custodial sentence would be harsh, unwarranted, excessive, and not commensurate with the offense committed.

*Deterrence*

The defense contends that a non-custodial sentence is "sufficient, but not greater than necessary" to act as a deterrence. An ordinary person who learns of the consequences of this type of illegal conduct, will be deterred from engaging in such activity. The operation of an unlicensed money transmitting business is punishable by a felony conviction. A felony conviction, in and of itself, is a powerful deterrence. As the Court is well aware, a felony conviction can potentially lead to a variety of collateral consequences. Unfortunately, Mr. Younis did not know of these consequences at the time that he committed the offense. Now that Mr. Younis' case has received international media exposure, the general public will be more educated about the consequences of this type of conduct. Mr. Younis' case will send a clear message that

this type of conduct is criminal and will not be tolerated in this country.  In sum, the deterrent effect has been accomplished here.

*Incapacitation*

Mr. Younis is not a threat to the community.  Mr. Younis is a first time offender and therefore he has no prior criminal background.  Mr. Younis' background reveals that he does not have a propensity for violence.  Mr. Younis is not a threat to the community and the public at large.  As mentioned above, at Mr. Younis' arraignment, the Government consented to a bail package that permitted his release into the community.  Had the Government believed that Mr. Younis was prone to violence, then it would have objected to his release on bail.  On the contrary, the Government acquiesced to his release in the instant case.  The very same factors which resulted in his release on bail, weigh heavily in favor of the imposition of a non-custodial sentence.

It is highly unlikely that Mr. Younis will revert back to this type of activity because his lack of criminal history indicates that he does not have a propensity to commit crimes.  Therefore, it is unnecessary for the Court to impose a custodial sentence because Mr. Younis is not a threat to the community.

*Rehabilitation*

A sentence of incarceration will serve no legitimate purpose in this case.  This assertion is substantiated by the fact that Mr. Younis has been fully compliant with his bail release conditions.  Mr. Younis has been under the supervision of the U.S. Pretrial Services since his arraignment on September 15, 2010.  Since that time period, Mr. Younis has not violated any of the terms and conditions of his release.  With respect to the pretrial services supervision, the P.S.R. specifically indicates that "Mr. Younis has been compliant with all reporting instructions." (See page 5 of Mr. Younis' P.S.R.).  Since Mr. Younis has been compliant with the mandates of the U.S. Pretrial Services Agency, then a custodial sentence would be harsh and excessive.  At a maximum, Mr. Younis should be sentenced to probation because his track record demonstrates that he is a perfect candidate for community based supervision.

Even though a sentence of imprisonment is qualitatively more severe than a probationary sentence of equal terms, a sentence of probation serves as an effective punishment.  A sentence of probation is not only rehabilitative, but it is also punitive because a probationer is subject to several standard conditions that substantially restrict their liberty.  United States v. Knights, 534 U.S. 112, 119 (2001).

## ACCEPTANCE OF RESPONSIBILITY

Mr. Younis is truly remorseful for his criminal conduct.  The P.S.R. specifically indicates that "the defendant related to this officer that he accepted responsibility for his criminal conduct..." (See page 7 of Mr. Younis' P.S.R.).

Mr. Younis has come to realize that his actions were wrong and he accepts full responsibility for his actions. Specifically, in his personal letter to Judge Keenan, Mr. Younis states in relevant part that "I am truly sorry for what I did. My actions were wrong and against the law. I transmitted this money without a proper money transmitting business registration." (See Mr. Younis' personal letter to the Honorable Judge Keenan, annexed hereto as EXHIBIT G).

Moreover, Mr. Younis should be afforded a non-custodial sentence because his cooperation with the authorities demonstrates that he has accepted responsibility for his actions. It should be noted that Mr. Younis cooperated with the authorities prior to retaining counsel on this matter. For example, Mr. Younis was compliant with the authorities on the day that he was initially questioned for his conduct. Moreover, Mr. Younis voluntarily appeared at the FBI's Melville offices for questioning on three separate occasions prior to being arrested. Further, Mr. Younis voluntarily appeared at the U.S. Attorney's Office for proffer sessions as well. In sum, Mr. Younis' actions, after the commission of the offense, clearly demonstrates his acceptance of responsibility.

## DEFENDANT'S SENTENCING RECOMMENDATION

Mr. Younis is a father and husband, who made a mistake of judgment, in a lifetime filled with accomplishments. There are many times when a Court, such as this one, exercises its judicial authority to impose a non-custodial sentence. Mr. Younis is deserving of such discretion. Mr. Younis is a first time offender of a non-violent regulatory offense. If the Court considers Ms. Younis' background, lack of criminal history, unwitting involvement, remote likelihood of recidivism, and cooperation, then the ends of justice would warrant a sentence of probation.

## CONCLUSION

This sentencing memorandum contains a great deal of mitigating factors for the Court to consider when imposing a sentence. A review of the sentencing memorandum will reveal that a custodial sentence would not be fair and equitable. Alternatively, the defense contends that a non-custodial sentence provides just punishment, adequate deterrence, and promotes rehabilitation as mandated by 18 U.S.C. section 3553.

In sum, the long list of mitigating factors supports a lenient sentence.

Respectfully submitted,

Phil Solages, Esq.
1300 Veterans Memorial Highway
Suite 320
Hauppauge, NY 11788
Attorney for Defendant Mohammad Younis

CC: AUSA John P. Cronan
United States Attorney's Office
Southern District of New York
1 St. Andrews Plaza
New York, New York 10007

CERTIFICATE OF SERVICE

I hereby certify that on November _15_, 2011, I electronically filed the defendant's
Sentencing Memorandum with the Clerk of the Court using the CM/ECF system which
will send notification of such filing to AUSA John Cronan, AUSA Jeffery Brown, &
AUSA Randall Jackson, Assistant United States Attorneys, United States Attorney's
Office, Southern District of New York, One St. Andrew's Plaza, New York, NY 10007.

Respectfully Submitted,

By: Phil Solages, Esq.



U.S. Department of Justice



*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 18, 2011

**By Hand**

Philippe Solages, Jr., Esq.
1300 Veterans Memorial Highway, Suite 320
Hauppauge, NY 11788
Tel.: (631) 366-5700

    Re:    **United States** v. **Mohammad Younis**
           **10 Cr. 813 (JFK)**

Dear Mr. Solages:

    On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from Mohammad Younis ("the defendant") to Count Two of the above-referenced Indictment.

    Count Two charges the defendant with operating an unlicensed money transmitting business, without the appropriate state money transmitting license, *see* 18 U.S.C. § 1960(b)(1)(A), and while failing to comply with the applicable federal money transmitting business registration requirements, *see* 18 U.S.C. § 1960(b)(1)(B), in violation of Title 18, United States Code, Sections 1960 and 2. Count Two carries a maximum term of imprisonment of five years, a maximum term of supervised release of three years, a maximum fine of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense, and a $100 mandatory special assessment. In addition to the foregoing, the Court must order restitution in accordance with Sections 3663, 3663A and 3664 of Title 18, United States Code.

    In consideration of the defendant's plea to the above offenses, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations as to which this Office cannot, and does not, make any agreement) for conspiring, in violation of Title 18, United States Code, Section 371, to engage in unlicensed money transmitting from January 2010 to May 2010, as charged in Count One of the Indictment, and for aiding and abetting the operation of an unlicensed money remitting business in 2010 in violation of Title 18, United States Code, Sections 1960 and 2, as charged in Count Two of the Indictment. In addition, at the time of sentencing, the Government will move to dismiss any open Count(s) against the defendant. The defendant agrees that with respect to any and all dismissed charges he is not a "prevailing party" within the meaning of the

Philippe Solages, Jr., Esq.
August 18, 2011

"Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

The defendant hereby admits the forfeiture allegation with respect to Count Two of the Indictment and agrees to forfeit to the United States, pursuant to Title 18, United States Code, Section 982, a sum of money equal to $12,000 in United States currency, representing the value of all property, real and personal, that was involved in the illegal money transmitting offense and traceable to such property (the "Money Judgment"). The Money Judgment constitutes property involved in the illegal money transmitting offense, and is not indicative of, or intended to represent, the loss, if any, suffered by any party as a result of the defendant's conduct. It is further understood that any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture. The defendant consents to the entry of the Consent Order of Forfeiture annexed hereto as Exhibit A and agrees that the Consent Order of Forfeiture shall be final as to the defendant at the time it is ordered by the Court.

In consideration of the foregoing and pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

A.    Offense Level

1.    The November 2010 Sentencing Guidelines Manual applies to this case.

2.    Pursuant to U.S.S.G. § 2S1.3, the base offense level for the offense charged in Count Two is 6.

3.    Because the amount of money involved in the offense was greater than $10,000, but not more than $30,000, 4 levels are added pursuant to U.S.S.G. §2B1.1(b)(1)(C).

4.    Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a).

In accordance with the above, the applicable Guidelines offense level is 8.

B.    Criminal History Category

Based upon the information now available to this Office (including representations by the defense), the defendant has no criminal history.

In accordance with the above, the defendant's Criminal History Category is I.

2

Philippe Solages, Jr., Esq.
August 18, 2011

    C.      Sentencing Range

        Based upon the calculations set forth above, the defendant's stipulated Guidelines range is zero to six months (the "Stipulated Guidelines Range"). In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 8, the applicable fine range is $1,000 to $10,000.

        The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party suggest that the Probation Office consider such a departure or adjustment under the Guidelines, or suggest that the Court *sua sponte* consider any such departure or adjustment.

        The parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range, suggest that the Probation Office consider a sentence outside of the Stipulated Guidelines Range, and suggest that the Court *sua sponte* consider a sentence outside of the Stipulated Guidelines Range, based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

        Except as provided in any written Proffer Agreement(s) that may have been entered into between this Office and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Range (or such other range as the Court may determine) the defendant should be sentenced and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a); (iii) to seek an appropriately adjusted Guidelines range if it is determined based upon new information that the defendant's criminal history category is different from that set forth above; and (iv) to seek an appropriately adjusted Guidelines range or mandatory minimum term of imprisonment if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence. Similarly, nothing in this Agreement limits the right of the Government to seek an enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1, regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

        It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the

Philippe Solages, Jr., Esq.
August 18, 2011

determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that his entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw his plea of guilty should the sentence imposed by the Court be outside the Guidelines range set forth above.

It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241; nor seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c), of any sentence within or below the Stipulated Guidelines Range of zero to six months' imprisonment, and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Range. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation. The parties agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case. The defendant further agrees not to appeal any term of supervised release that is less than or equal to the statutory maximum.

The defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty. By entering this plea of guilty, the defendant waives any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady* v. *Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, and impeachment material pursuant to *Giglio* v. *United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

The defendant recognizes that because he is not a citizen of the United States, his guilty plea and conviction puts him at risk for suffering adverse immigration consequences. The defendant acknowledges that he has discussed the possible immigration consequences (including deportation)

4

Philippe Solages, Jr., Esq.
August 18, 2011

of his guilty plea and conviction with defense counsel. The defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction, even if those consequences include deportation from the United States. It is agreed that the defendant will have no right to withdraw his guilty plea based on any actual or perceived adverse immigration consequences (including deportation) resulting from the guilty plea and conviction. It is further agreed that the defendant will not challenge his conviction or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including deportation) resulting from his guilty plea and conviction.

It is further agreed that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

Philippe Solages, Jr., Esq.
August 18, 2011

      Apart from any written Proffer Agreement(s) that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

PREET BHARARA
United States Attorney

By: _____

Jeffrey A. Brown
John P. Cronan
Assistant United States Attorneys
Tel.: (212) 637-1110 (Brown)
Tel.: (212) 637-2779 (Cronan)

APPROVED:

_____
Michael Farbiarz
Co-Chief
Terrorism and International Narcotics Unit

AGREED AND CONSENTED TO:

_____
Mohammad Younis

APPROVED:

_____
Philippe Solages, Esq.
Attorney for Mohammad Younis

8 — 18 — 11
_____
DATE

8/18/11
_____
DATE

6

**Exhibit A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x
                      :

UNITED STATES OF AMERICA            <u>CONSENT ORDER OF FORFEITURE</u>
                      :
       -v.-                 10 Cr. 813 (JFK)
                      :
MOHAMMAD YOUNIS,
                      :
         Defendant.
                      :
- - - - - - - - - - - - - - - - - x

        WHEREAS, on September 15, 2010, MOHAMMAD YOUNIS (the "Defendant") was charged in a two-count Indictment, 10 Cr. 813 (JFK) (the "Indictment"), with conspiring to operate an unlicensed money transmitting business, in violation of Title 18, United States Code, Section 371 ("Count One"); and operating an unlicensed money transmitting business, in violation of Title 18, United States Code, Sections 1960 and 2 ("Count Two");

        WHEREAS, the Indictment included a forfeiture allegation as to Count One of the Indictment seeking, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense alleged in Count One of the Indictment;

        WHEREAS, the Indictment included a forfeiture allegation as to Count Two of the Indictment seeking, pursuant to Title 18, United States Code, Section 982, all property, real and

personal, involved in the illegal money transmitting offense and any property traceable to such property;

WHEREAS, on or about August 18, 2011, the Defendant pled guilty to Count Two of the Indictment, pursuant to a plea agreement with the Government, wherein the Defendant admitted the forfeiture allegation as to Count Two of the Indictment and agreed to forfeit to the United States, pursuant to Title 18, United States Code, Section 982, a sum of money equal to $12,000.00 in United States currency, representing the value of all property, real and personal, that was involved in the illegal money transmitting offense charged in Count Two of the Indictment and traceable to such property;

WHEREAS, the Defendant consents to entry of a money judgment in the amount of $12,000.00 in United States currency, representing the value of all property, real and personal, that was involved in the illegal money transmitting offense charged in Count Two of the Indictment and traceable to such property;

IT IS HEREBY STIPULATED AND AGREED, by and between the plaintiff, United States of America, by its attorney Preet Bharara, United States Attorney, Assistant United States Attorneys Jeffrey A. Brown and John P. Cronan, of counsel, and the Defendant, and his counsel, Philippe Solages, Esq. that:

1. As a result of the offense charged in Count Two of the Indictment, to which the Defendant pled guilty, a money

2

judgment in the amount of $12,000.00 in United States currency (the "Money Judgment") shall be entered against the Defendant.

2.   Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Consent Order of Forfeiture shall be final as to the Defendant upon entry of this Order, and shall be made part of the sentence of the Defendant, MOHAMMAD YOUNIS, and shall be included in the judgment of conviction therewith.

3.   Upon execution of this Consent Order of Forfeiture and pursuant to Title 21, United States Code, Section 853, the United States Marshals Service (or its designee) shall be authorized to deposit the payments on the Money Judgment in the Assets Forfeiture Fund, and the United States shall have clear title to such forfeited property.

4.   Pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, upon entry of this Consent Order of Forfeiture the United States Attorney's Office is authorized to conduct any discovery needed to identify, locate or dispose of the property, including depositions, interrogatories, requests for production of documents and to issue subpoenas, pursuant to Rule 45 of the Federal Rules of Civil Procedure.

5.   All payments on the outstanding Money Judgment shall be made by postal money order, bank or certified check, made payable, in this instance to the "United States Marshals Service," and delivered by mail to the United States Attorney's

3

Office, Southern District of New York, Attn: Asset Forfeiture Unit, One St. Andrew's Plaza, New York, New York 10007 and shall indicate the Defendant's name and case number.

6.   The Court shall retain jurisdiction to enforce this Order, and to amend it as necessary, pursuant to Rule 32.2(e) of the Federal Rules of Criminal Procedure.

7.   The Clerk of the Court shall forward three certified copies of this Consent Order of Forfeiture to Assistant United States Attorney Sharon Cohen Levin, Chief of the Asset Forfeiture Unit, United States Attorney's Office, One St. Andrew's Plaza, New York, New York 10007.

8.   The signature pages of this Order may be executed in one or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.

AGREED AND CONSENTED TO:

PREET BHARARA
United States Attorney for the
Southern District of New York

By: _____          8/18/11
    Jeffrey A. Brown                    _____
    John P. Cronan                      DATE
    Assistant United States Attorneys
    One St. Andrew's Plaza
    New York, New York 10007
    Tel.: (212) 637-1110/2779

MOHAMMAD YOUNIS
DEFENDANT

By: _____          8-18-11
    Mohammad Younis                     _____
                                        DATE

By: _____          8/18/11
    Philippe Solages, Esq.             _____
    Attorney for Defendant             DATE
    1300 Veterans Memorial Highway
    Suite 320
    Hauppauge, New York 11788
    Tel.: (631) 366-5700

SO ORDERED:

_____              8/18/11
HONORABLE JOHN F. KEENAN               _____
UNITED STATES DISTRICT JUDGE           DATE



Serial No. 37/BAC

Registration No. 85-ag-514

4030

# University of Agriculture Faisalabad

In recognition of the fulfilment of prescribed requirements

Awards

## Muhammad Younis Son/Daughter of Abdul Hameed

the degree of

## Bachelor of Science (Honours) Agriculture

(Four Year Course)

In the year 1989



Controller of Examinations

Faisalabad, the   th January, 1990

Vice Chancellor

Chancellor

C













F



In the name of Allah, The Beneficent, The Merciful

# Islamic Association of Long Island, Inc.

Ph: ████████
Fax: ████████
Email: ████████

---

MASJID IMAM (DIRECTOR) - Abdul Razzak Aziz

President – Mohammad J. Akhtar
President-Elect – Iqbal Chaudhry
Vice-President – Nawab Faridi
Secretary - Syed Hafizur Rahman
Treasurer – Bilal Malik

BOARD OF TRUSTEE
Chairman - Tahir Qureshi
Vice-Chairman - Ovais Sheikh
Members:
Farrukh Baig
Tohur Chowdhury
Abdul Abumusallam
Iqbal Sayed

October 7, 2011

## TO WHOM IT MAY CONCERN

This is to certify that MOHAMMAD YOUNIS, a resident of 90 Oxhead Road, Centereach, NY is a member of our community. To my knowledge, Mr. Younis bears a good moral character. He attends the regular prayer services and other religious functions at this religious center. Mr. Younis is a peace loving citizen of this community. I pray for his great success in his life.

If you have any question regarding the above matter, please don't hesitate to contact me the phone number listed above.

Sincerely,

Abdul Razzak Aziz
Imam (Director),
Islamic Association of Long Island

TO

HON. JUDGE

JOHN F KEENAN

500 PEARL STREET

NEWYORK

Sir

Muhammad Younis resident of 90 Oxhead Road,Centereach,NY 11720

is a helpful person to friends and family.He does stuff for people and  help

Them out because he is a loving and caring person.

He lost his job since last December.He is unable to go anywhere and get a

Job.He is staying home and getting depressed.He will love to go back to work

as soon as possible.

He is not a trouble making person so he shouldn't  go to jail.

THANKS

Wanin Moore

TO

    THE HONORABLE JUDGE

    JOHN F KEENAN

    UNITED STATES DIST.COURT

    NY

Sir

    I am writing this letter on Muhammad Younis behalf ,I know him for the past fourteen years. We use to work together at 7-Eleven Store in Lakegrove.He met his future wife at the same store.

He loves his wife and he has a great regard for this country.

He is a hardworking man who is supporting his family and trying to live the American Dream.He is a peace loving citizen.

He is not a trouble maker.

Very truly yours

Asif Mahmood



TO

HON.JUDGE

JOHN F KEENAN

500 PEARL STREET

NY

Sir

I know Muhammad Younis for the past few years through my deceased brother . I found him a hardworking and a dedicating individual who is always there in the hour of need.

I know he is trying hard to support his family. He loves his family and this Country. He is a peace loving citizen.

I know he did a mistake but jail is not a suitable place for him.

Thanks

Saleem Akbar

TO
     HON.JUDGE
     JOHN F KEENAN
     500 Pearl Street
     NY

Sir
     I know Muhammad Younis for the past four years.I was looking for a Job when someone referred me to him.Mr Younis helped me to get the job and I even have the privilage to work with him.

He is a hard working man who loves his wife and his daughter very much.He always talks positive about every thing.He is a peace loving citizen.I know jail is not a suitable place for him.

        Thanks

        Shakeel Ahmed

TO      HON.JUDGE

       JOHN F KEENAN

       500 PEARL STREET

       NY

Sir

    I know Muhammad Younis from 7-Eleven at 2209 middle country road

Centereach,NY.Even though he is not working there anymore people or

Colleagues who knows him still talk about him as a hardworking,dependable

person.Every body knows him as a loving father and a caring husband.

I wish him good luck where ever he goes.

He is a law abiding citizen.Even he did a mistake still jail is not a place for

him.

           Thanks

           Farooq Ahmed



10/23/2011

Honorable Judge, John F. Keenan
U.S. District Court of New York City

Dear Judge Keenan:

I am writing to inform you of my direct experience with Mohammad Younis. Besides being my Roommate from 1993 to 1998, Mohammad Younis is still to this very day, years later, my good friend. For eighteen years, I have witnessed his honesty, loyalty, and caring nature when it comes to all of his dealings with friends, family, and business associates.

I respectfully request the mercy of your court.

Respectfully,

Umar Iqbal

G

*TO*

      *HON.JUDGE*

      *JOHN F KEENAN*

      *500 PEARL STREET*

      *NY*

*Subject*

      *Request for leniency in sentencing*

*Sir*

      *I Muhammad Younis is a hardworking responsible man as well as a devoted father and a husband.I was trying hard and doing my best to support my family.I was never involved in any kind of criminal activity,other than this incident.*

  *I am truly sorry for what I did.My actions were wrong and against the law.I transmitted this money without a proper money transmitting business registration.*

  *My negligence that was not intentional caused a lot of*

*Chaos and trouble to myself as well as to my family.*

*Especially media exposure created a lot of negative*

*Consequences and as a result I lost my job. I am*

*Suffering a lot emotionally and financially because of my*

*Wrong doing.*

*I am not a trouble making person. I am a peaceful,*

*loving and caring individual. I am the sole provider of*

*my family.*

*Please be lenient with my sentencing so that I can go*

*Back to work as soon as possible and start supporting my*

*Family once again.*

*THANKS*