UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| - v. - | :    10 Cr. 813 (JFK) |
| MOHAMMAD YOUNIS, | : |
| Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

### SENTENCING MEMORANDUM

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States
of America

JEFFREY A. BROWN
JOHN P. CRONAN
Assistant United States Attorneys
- Of Counsel -

## Table of Contents

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

I.   Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

     A.   Background On The "Hawala" System . . . . . . . . . . . . . . . . . . . . . . . .  2

     B.   Younis's Operation Of An Illegal Money Transmitting Business . . . . . . .  2

     C.   The Attempted Bombing Of Times Square On May 1, 2010 . . . . . . . . . .  3

     D.   The Criminal Charges And Younis's Guilty Plea . . . . . . . . . . . . . . . . . .  4

II.  Applicable Legal Principles . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

III. Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

     A.   The Applicable Guidelines Range . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

     B.   The 18 U.S.C. § 3553(a) Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

     C.   The Court Should Order Forfeiture In The Amount Of $12,000 . . . . . . . .  9

IV.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

## Table of Authorities

*Cases:*

*Gall* v. *United States*,
    553 U.S. 46 (2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States* v. *Booker*,
    543 U.S. 220 (2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States* v. *Cavera*,
    550 F.3d 180 (2d Cir. 2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States* v. *Crosby*,
    397 F.3d 103 (2d Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


*Statutes, Rules & Other Authorities:*

18 U.S.C. § 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. § 371. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 982. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

18 U.S.C. § 1960. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. § 3553. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 8

U.S.S.G. § 2B1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

U.S.S.G. § 2S1.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

U.S.S.G. § 3E1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA     :

     - v. -     :     **10 Cr. 813 (JFK)**

MOHAMMAD YOUNIS,     :

           Defendant.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - X

## SENTENCING MEMORANDUM

The Government respectfully submits this memorandum in connection with the sentencing of Mohammad Younis, which is scheduled for December 1, 2011.  In April 2010, Younis unlawfully provided money transmitting services to two individuals in the New York City area, by participating in the operation of a "hawala" business.  One of these individuals was Faisal Shahzad.  On May 1, 2010, Shahzad attempted to detonate a car bomb in Times Square. Some of the ingredients Shahzad used in constructing the bomb were purchased with money that had been transmitted to Younis from Pakistan, and then conveyed from Younis to Shahzad.

Younis did not have any knowledge of Shahzad's plans to use the illegally transmitted funds to conduct a terrorist attack.  But Shahzad's ultimate use of the funds illustrates the seriousness of Younis's offense and the need to criminalize and deter unlicensed money transmitting.  Simply put, unlawful and untraceable financing channels existing outside the regulated banking system open up a space from which serious crimes – even including international terrorism – can be supported and facilitated.  That is what happened here. Mohammad Younis did not set out to support or to countenance terrorism or violence.  But Younis's unlawful money transmission served as a financial bridge into the United States,

connecting Faisal Shahzad with the men who had trained him in Pakistan.  And these facts make it clear why unregulated money transmission is a federal crime – and why general deterrence is important in this area.  In these circumstances, and for the reasons set forth below, the Government submits that a Guidelines sentence should be imposed.

## I. FACTUAL BACKGROUND

### A.   Background On The "Hawala" System

The "hawala" system is a type of informal value transfer system in which money does not physically cross international boundaries through the banking system.  Rather, in the hawala system, funds are transferred by customers to a hawala operator, or "hawaladar," in one country, and corresponding funds, less any fees and commissions, are disbursed to recipients in another country by hawaladar associates on that end.

### B.   Younis's Operation Of An Illegal Money Transmitting Business

On April 10, 2010, Younis provided illegal money transmitting services by engaging in two separate hawala transactions with customers who traveled from Connecticut and New Jersey, respectively, to meet with him in Long Island.  In each of these transactions, Younis provided several thousands of dollars in cash to individuals without any knowledge of the identities of the customers or of how the customers were planning to use the funds.  One of these two individuals who received funds from Younis on April 10th was Shahzad, the attempted Times Square bomber, to whom Younis handed $7,000.

Younis provided the $7,000 to Shahzad at the direction of his brother in Pakistan.  Prior to the transaction, Younis's brother called him (Younis) from Pakistan and told Younis that he would be receiving a call on April 9, 2010 or April 10, 2010 to arrange a hawala transfer. Younis

later received a call from a Connecticut phone number and arranged to meet with that individual (Shahzad) on April 10, 2010.  On the morning of April 10, 2010, Younis met with Shahzad near the Ronkonkoma Long Island Railroad train station, where Younis gave Shahzad approximately $7,000 in $100 bills.  Later in the day on April 10, Younis delivered money to a second individual in in the vicinity of Commack, Long Island, and provided this person with $5,000. Similar to his transaction earlier that day with Shahzad, Younis delivered the money to this second individual at the direction of his brother in Pakistan.

During each of the April 10, 2010 transactions, the recipient of the transferred funds presented Younis with a single dollar bill.  Prior to making the cash deliveries, Younis's brother conveyed to Younis the serial number of the dollar bills that each individual would present to Younis.  The purpose of presenting these dollar bills was so that Younis could verify the serial number to confirm that the person was in fact the correct recipient of the funds.  This process of verification by dollar bill serial numbers is a common business practice among hawaladars, and permits the transfers to be effectuated entirely anonymously.[1]

At no time did Younis or his brother have a license to operate a money transmitting business from either state or federal authorities.

## C.     The Attempted Bombing Of Times Square On May 1, 2010

On the evening of Saturday, May 1, 2010, just three weeks after receiving $7,000 from Younis, Shahzad drove a sports utility vehicle from his residence in Connecticut to Times

---

[1]      Such verification is necessary because both sides of a hawala transaction typically do not know each other in advance of the money transfers.  Consequently, hawaladars have developed this procedure to enable the individual delivering the money to confirm that the other individual is in fact the proper recipient of the funds.

-3-

Square.  Inside of Shahzad's vehicle were multiple tanks filled with propane gas, as well as fireworks, clocks, wiring, and other items.  After parking his vehicle, Shahzad initiated the detonation process for the explosive, departed the vehicle, and walked toward Grand Central Station.  By the time emergency services workers arrived at the scene, the vehicle was visibly smoking.

Following his arrest, Shahzad was advised of his *Miranda* rights and confessed to his role in the attempted bombing.  Among other things, Shahzad stated that he received four days of explosives training from a trainer affiliated with the Tehrik-e-Taliban (the "TTP"), a militant extremist group based in Pakistan.[2]  After receiving this training, Shahzad returned to the United States and, over the course of three months in early 2010, purchased the necessary components for the bomb, including fertilizer, propane, and gasoline.  Shahzad confessed that he received approximately $12,000 in cash from the TTP to help fund the attack.  Of the $12,000 that Shahzad received from the TTP, $7,000 was hand delivered to Shahzad by Younis on April 10, 2010.[3]

## D.    The Criminal Charges And Younis's Plea

On September 15, 2010, Younis was named in a sealed Indictment charging him in two counts.  Count One charged Younis with conspiring to conduct an unlicensed money transmitting business, in violation of Title 18, United States Code, Section 371.  Count Two charged Younis

---

[2]     The TTP was recently designated a foreign terrorist organization ("FTO") by the United States Department of State.  The group was not a designated FTO at the time of the attempted bombing on May 1, 2010.

[3]     As a result of his conduct, Shahzad was charged in a ten-count indictment.  At his At his first appearance before the Court, Shahzad pled guilty to all ten charges against him.  On October 5, 2010, Shahzad was sentenced to life imprisonment.

with a substantive count of operating an unlicensed money transmitting business, in violation of Title 18, United States Code, Sections 1960 and 2. In both counts, the Indictment alleged that Younis lacked the appropriate state money transmitting license, *see* 18 U.S.C. § 1960(b)(1)(A), and failed to comply with the applicable federal money transmitting business registration requirements, *see* 18 U.S.C. § 1960(b)(1)(B). Younis was arrested on September 15, 2010, and has been released on bail since.

Younis pled guilty to Count Two of the Indictment on August 18, 2011, pursuant to a plea agreement. Under that plea agreement, the parties stipulated that the applicable Guidelines offense level is 8, which, given Younis's lack of a criminal history, results in a Guidelines range of zero to six months' imprisonment. In the plea agreement, Younis also admitted the forfeiture allegation as to Count Two, and agreed to forfeit $12,000 to the United States, pursuant to Title 18, United States Code, Section 982. On August 18, 2011, this Court issued a Consent Order of Forfeiture consistent with the terms of the plea agreement.

## II.   APPLICABLE LEGAL PRINCIPLES

Under current law, sentencing courts must engage in a three-step sentencing procedure. *See United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). First, the district court must determine the applicable sentencing range, and, in so doing, "the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." *Id.* at 112. Second, the district court must consider whether a departure from that Guidelines range is appropriate. *Id.* Third, the court must consider the Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to impose. *Id.* at 113.

-5-

Although the Guidelines are no longer mandatory, district courts must continue to "consult" the Guidelines and "take them into account" when sentencing. *United States* v. *Booker*, 543 U.S. 220, 264 (2005); *accord United States* v. *Cavera*, 550 F.3d 180, 187 (2d Cir. 2008) ("In [*Booker*], the Court retained an important role for the Sentencing Commission, leaving untouched the statutory direction to district courts that they should consult the Guidelines range when imposing sentence.") (citing *Booker*, 543 U.S. at 245-46). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall* v. *United States*, 552 U.S. 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings, *id.* at 49, and must "remain cognizant of them throughout the sentencing process," *id.* at 50 n.6. It also is the Court's duty to form its own view of the "nature and circumstances of the offense and the history and characteristics of the defendant," and to then impose a sentence "sufficient, but not greater than necessary," to accomplish the objectives of criminal sentencing. 18 U.S.C. § 3553(a); *see United States* v. *Cavera*, 500 F.3d at 188 ("In addition to taking into account the Guidelines range, the district court must form its own view of 'the nature and circumstances of the offense and the history and characteristics of the defendant.'").

After performing the Guidelines calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3); the Guidelines range itself, *see id.* § 3553(a)(4); any relevant policy statement

-6-

by the Sentencing Commission, *see id.* § 3553(a)(5); "the need to avoid unwarranted sentence

disparities among defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any

victims," *id.* § 3553(a)(7).      In determining the appropriate sentence, the statute directs judges

to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of

sentencing, which are:

> (A)    to reflect the seriousness of the offense, to promote respect for the law,
>        and to provide just punishment for the offense;
>
> (B)    to afford adequate deterrence to criminal conduct;
>
> (C)    to protect the public from further crimes of the defendant; and
>
> (D)    to provide the defendant with needed educational or vocational training,
>        medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

## III.   DISCUSSION

### A.    The Applicable Guidelines Range

The Government agrees with the Probation Office's analysis with respect to the

applicable Guidelines range for Younis, which is consistent with the calculation contemplated in

the plea agreement.  Specifically, the Government agrees that, pursuant to United States

Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 2S1.3, the base offense level for the

offense is six.  Pursuant to U.S.S.G. § 2B1.1(b)(1)(C), an additional four levels are added

because the amount of money involved in the offense was greater than $10,000, but not more

than $30,000.  Because Younis accepted responsibility by pleading guilty prior to trial and

provided timely notification of his intention to plead guilty, the offense level is decreased by two

levels under U.S.S.G. § 3E1.1(a).

Based on the foregoing, the Government agrees that Younis's applicable Guidelines offense level is eight.  Because Younis does not have a criminal history, the Government further agrees with the Probation Department that the applicable Guidelines range is zero to six months, and, after determining Younis's ability to pay, the applicable fine range would be $1,000 to $10,000.

**B.      The 18 U.S.C. § 3553(a) Factors**

The Government in no way contends that Younis knew that the funds he provided to Shahzad would go toward committing a terrorist attack.  Nonetheless, Younis's offense remains a serious one.  *See* 18 U.S.C. § 3553(a)(2)(A).  By illegally transmitting money to Shahzad and not pausing to learn to whom the funds were going and for what purpose, Younis's conduct demonstrated the danger inherent in unlicensed monetary transfers.  While Younis contends that "[t]here are no identifiable victims in connection with Mr. Younis's conduct because none exist," Younis Sentencing Memorandum at 7, scores of innocent people were very nearly victimized by the activity Younis unwittingly funded.  By operating a hawala, Younis made a business of putting his head in the sand – of blinding himself to even the most basic facts of who his customers were.  The foreseeable wages of such conduct are what happened here – criminals, and serious ones, could (and, in this case, did) make use of Younis's services.

Moreover, the sentence imposed should reflect not only the seriousness of the offense, but also the need to deter others from engaging in similar criminal activity.  *See* 18 U.S.C. § 3553(a)(2)(B).  Younis acknowledges that this is a case that should "send a clear message that this type of conduct is criminal and will not be tolerated in this country."  Younis Sentencing Memorandum at 9-10.  The Government agrees.

-8-

Younis's contention that he deserves a lenient sentence because the amount of transmitted funds – $12,000 – "is a nominal value" "[i]n the grand scheme of things," is not convincing. Younis Sentencing Memorandum at 9.  To be clear, the $7,000 that Younis provided to Shahzad was absolutely essential to fund a potentially deadly terrorist attack.  Indeed, of the $12,000 that the TTP provided to Shahzad to fund the bombing, the majority was handed to him by Younis on April 10, 2010.

**C.      The Court Should Order Forfeiture In The Amount of $12,000**

Pursuant to the Consent Order of Forfeiture signed by this Court on August 18, 2011, Younis has been ordered to forfeit to the United States a money judgment in the amount of $12,000 pursuant to Title 18, United States Code, Section 982.  This Court therefore should include forfeiture as part of the sentence and included in the judgment of conviction.

## IV.   CONCLUSION

Based on the foregoing, the Government respectfully submits that a sentence within the advisory Guidelines range of zero to six months is appropriate in this case, as is a fine in the $1,000 to $10,000 range.  In addition, the Court should impose a $12,000 forfeiture judgment.

Dated: November 23, 2011
        New York, New York

                                  Respectfully submitted,

                                  PREET BHARARA
                                  United States Attorney

                    By:     _John P. Cronan_____

                                  JEFFREY A. BROWN
                                  JOHN P. CRONAN
                                  Assistant United States Attorneys
                                  (212) 637-1110/2779